900 So.2d 212 (2005)
STATE of Louisiana, Appellee
v.
Christopher TAYLOR, Appellant.
No. 39,651-KA.
Court of Appeal of Louisiana, Second Circuit.
April 6, 2005.
*215 G. Paul Marx, Paula Corley Marx, Lafayette, for Appellant.
William R. Jones, District Attorney, Julie C. Jones, Assistant District Attorney, for Appellee.
Before BROWN, CARAWAY and PEATROSS, JJ.
CARAWAY, J.
A jury convicted Christopher Taylor of attempted possession of marijuana with intent to distribute and attempted possession of a firearm by a convicted felon.[1] Taylor was adjudicated a habitual offender and was sentenced to thirty years hard labor on the drug charge. Additionally, he was sentenced to seven years at hard labor and a $1000 fine on the gun conviction. Taylor appeals only the attempted possession of marijuana conviction and sentence. We affirm.

Facts
On November 6, 2003, Red River Parish deputies executed a search warrant for the apartment of a female, Roctreas "Roc" McCray ("McCray"), after receiving information from McCray's father, Mack Lewis, that guns and drugs belonging to the defendant, Christopher Taylor, were located in the dwelling. Lewis believed Taylor was living in the apartment and that McCray had been out of town the previous week. Lewis claimed two of his other daughters provided him with the information. Lewis visited the apartment and, after seeing guns and drugs, contacted Red River Parish Deputy Johnny Taylor. Deputy Taylor reported the parties' apparent illegal activity to Taylor's and McCray's parole and probation officers. McCray was on probation for an aggravated battery conviction. Taylor was on parole for a manslaughter conviction and had been out of prison for only a few weeks. Because both McCray and Taylor had reported to the probation office that morning, Deputy Taylor was able to secure consent to search forms for McCray's apartment and another address provided *216 by Taylor. Subsequently, detectives searched one of the bedrooms of McCray's apartment and found a Lorcin .380 semi-automatic pistol concealed between the bed mattress and box spring and a .38 revolver with bullets in a box in the closet. Forty-two individually wrapped packages of marijuana and two bags of crack cocaine were found in the chest of drawers located in the bedroom. Detectives also found two shirts hanging in the room which Taylor admitted were his. From the headboard of the bed, detectives also recovered a picture identification card belonging to Taylor. As the result of the search, both McCray and Taylor were arrested. Taylor was charged with possession with intent to distribute marijuana, possession of cocaine and possession of a firearm by a convicted felon. After his conviction and sentencing as a habitual offender, Taylor sought a reconsideration of the imposed sentence which was denied by the trial court. This appeal followed.

Discussion
Taylor first argues that the evidence failed to exclude the reasonable hypothesis that the drugs belonged to McCray. He claims the only evidence showing that Taylor possessed the drugs came from biased witnesses who knew McCray would go to prison if she possessed illegal drugs.
Taylor failed to file a motion for post-verdict judgment of acquittal. The question of sufficiency of the evidence is properly raised by such a motion. La. C.Cr.P. Art. 821. Nevertheless, this court will consider sufficiency arguments even in the absence of such a motion. State v. Henry, 36,217 (La.App. 2d Cir.8/14/02), 823 So.2d 1064.
The standard of appellate review for a sufficiency-of-evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant is guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Lilly, 468 So.2d 1154 (La.1985); State v. Turner, 591 So.2d 391 (La.App. 2d Cir.1991), writ denied, 597 So.2d 1027 (La.1992). For circumstantial evidence to convict, it must exclude every reasonable hypothesis of innocence. La. R.S. 15:438.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984).
*217 The crime of possession with intent to distribute a Schedule I drug requires proof that the defendant knowingly and intentionally possessed the drug and that he did so with the specific intent to distribute it. State v. Johnson, 34,902 (La.App. 2d Cir.9/26/01), 796 So.2d 201, writ denied, 03-2631 (La.11/8/04), 885 So.2d 1124; State v. Marshall, 02-1067 (La.App. 5th Cir.2/25/03), 841 So.2d 881, writ denied, 03-0909 (La.9/26/03), 854 So.2d 345. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. La. R.S. 14:27. Thus, in this case, the State was required to prove that Taylor had the specific intent to possess marijuana with the intent to distribute it and that he did an act or omitted to do an act for the purpose of and tending directly toward the accomplishment of his object. State v. Gilbert, 02-922 (La.App. 5th Cir.1/28/03), 839 So.2d 250; State v. Hines, 02-397 (La.App. 5th Cir.9/30/02), 829 So.2d 530.
Regarding the element of possession of a controlled dangerous substance, the state need not prove the defendant was in physical possession of the narcotics found; constructive possession is sufficient to support a conviction. State v. Toups, 01-1875 (La.10/15/02), 833 So.2d 910. Constructive possession means having an object subject to one's dominion and control, with knowledge of its presence, even though it is not in one's physical possession. State v. Holland, 39,922 (La.App. 2d Cir.12/10/03), 862 So.2d 448; State v. White, 37,261 (La.App. 2d Cir.6/25/03), 850 So.2d 987. Attempted possession may be proved by constructive possession. State v. Daniels, 614 So.2d 97 (La.App. 2d Cir.1993), writ denied, 619 So.2d 573 (La.1993). Guilty knowledge is an essential element of the crime of possession of contraband, and such knowledge can be inferred from the circumstances. State v. Toups, supra.
A determination of possession sufficient to convict depends on the peculiar facts of each case. Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include his knowledge that the drugs were in the area, his relationship with the person found to be in actual possession, his access to the area where the drugs were found, evidence of recent drug use, and his physical proximity to the drugs. Id. A subject can have constructive possession if he wilfully and knowingly shares with a companion the right to control the drugs. State v. Marshall, supra.
We find the evidence sufficient to support Taylor's conviction. A joint stipulation conceded that an expert witness would have testified that the marijuana found was packaged for sale or distribution. Taylor does not contest the distribution element on appeal. Taylor solely argues that the evidence failed to prove the possession element of the offense. Obviously, because the marijuana was not in Taylor's actual possession when it was seized, the inquiry before us is whether the state proved his constructive possession of the marijuana.
At trial the state presented the testimony of Detective Taylor who testified that the defendant told him he did not live in the apartment, but that he "hangs" there sometimes. Melissa Murray, McCray's probation officer, also testified that the defendant told her "he stayed there some." Detective Taylor also testified that upon his search of McCray's apartment, he found two shirts hanging on the bedroom *218 closet door and that Taylor admitted at least one was his. The detective further stated that Taylor's photo identification was found on the headboard and marijuana was seized from a dresser drawer in the same room.
As discussed above, Mack Lewis testified that he believed Taylor lived in McCray's apartment. He had visited the location one evening and saw Taylor come to the apartment and go directly to the bedroom. He also recalled that McCray had been out of town for a week, the week before this incident.
McCray and her two sisters, Tamero and Easie, also testified that Taylor lived in the apartment. The sisters stated they saw him bring drugs into the apartment. Tamero testified that Taylor had clothes in McCray's apartment and that lots of foot traffic went in and out of the apartment. She specifically recalled seeing Taylor selling drugs in and out of the house and bringing marijuana into the apartment in a Wal-Mart bag. She also remembered one incident when she saw him selling drugs to someone in a truck. On that occasion, Tamero talked to Taylor about what he was doing. Tamero's husband, Tita Bradley, testified that he had been warned that there were drugs in McCray's apartment. He went to the apartment upon his release from jail and also saw traffic coming in and out of the apartment. Bradley witnessed Taylor come into the apartment, walk to McCray's room and close the door. He then saw Taylor come out of the room and go back outside. Bradley felt there were drugs in the apartment so he left.
McCray testified that Taylor was her boyfriend and had been staying with her since he got out of jail. Taylor had free access to her home and the two shared her chest of drawers. Taylor had a toothbrush at McCray's apartment. McCray acknowledged that lots of traffic went in and out of her apartment. McCray also stated she had seen Taylor with drugs in her apartment a couple of days before his arrest. McCray admitted that upon the search of the apartment, she never told the detectives the drugs and guns belonged to Taylor.
Easie McCray testified that she lives with McCray and that Taylor stayed in McCray's apartment when he got out of jail. Easie stated Taylor slept in the apartment on a regular basis and showered and kept clothes there. Easie had seen Taylor bring drugs into the apartment in a Wal-Mart bag.
Alvie Myers, Taylor's parole specialist, testified that Taylor was released from prison on October 15, 2003. Taylor provided two different addresses for visitation and on the consent to search forms. Neither address was for McCray's apartment.
The defense presented the testimony of three other residents of McCray's apartment complex. These witnesses identified two other young men who frequented McCray's apartment. Shelia Lewis testified she knew that Taylor did not live at the apartment, although he would be there at times. Anita Morris testified that Taylor lived with his mother, although she had seen him at McCray's apartment complex. Tiara Morris also testified that Taylor lived with his mother. Rose Byrd, the manager of McCray's apartment complex, testified that Taylor was not included on the list of tenants, although she was aware that he once broke a window in McCray's apartment.
In this matter, the jury obviously believed the testimony of the McCray sisters and their father that Taylor had been living in the apartment, brought drugs in and sold them from the apartment. Despite the involvement of his daughters, Lewis first reported the evidence of criminal conduct *219 to the authorities. Taylor's claim that McCray's family members were motivated to protect McCray is ultimately a credibility determination which will not be disturbed on appeal. Certainly, if believed, this testimony establishes that Taylor would have had access to the drugs in the room where his shirts and identification were found. Furthermore, the evidence showing Taylor to have brought drugs into the apartment is more than sufficient to show his guilty knowledge that the drugs were in the area. Finally, the eyewitness accounts of Taylor selling drugs is further proof of his intent to distribute the marijuana. We find this evidence sufficient to establish beyond a reasonable doubt Taylor's specific intent to possess marijuana with intent to distribute and an act tending directly toward the accomplishment of that object. Thus, we affirm the jury verdict.

Excessive Sentence
Taylor next argues that the imposition of the maximum thirty year sentence is excessive because the sentence imposed "far exceeds a reasonable penalty for a first offense drug charge. . . ."
Any person who violates La. R.S. 40:966(A) by possessing marijuana with intent to distribute shall upon conviction be sentenced to a term of imprisonment at hard labor for not less than five nor more than thirty years, and pay a fine of not more than $50,000. La. R.S. 40:966(B)(3). One who is convicted of attempted possession of marijuana with intent to distribute shall be fined or imprisoned in the same manner as for the offense planned or attempted but such fine or imprisonment shall not exceed one-half of the punishment prescribed for the completed offense. La. R.S. 14:27; La. R.S. 40:979.[2]
Any person adjudicated a habitual second felony offender shall be sentenced to imprisonment for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for the charged offense if that offense is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life. La. R.S. 15:529.1 A(1)(a). Any sentence imposed under the provisions of the habitual offender law shall be without benefit of probation or suspension of sentence. La. R.S. 15:529.1(G).
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App. 2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App. 2d Cir.3/1/00), 754 So.2d 392, 394, writ denied, 00-1467 (La.2/2/01), 783 So.2d 385; State v. Callahan, 29,351 (La. App. 2d Cir.2/26/97), 690 So.2d 864, writ *220 denied, 97-0705 (La.9/26/97), 701 So.2d 979.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App. 2d Cir.4/2/97), 691 So.2d 864. A trial court has broad discretion to sentence within the statutory limits. That sentence should not be set aside absent a showing of manifest abuse of that discretion. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158.
As a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender. State v. Grissom, 29,718 (La.App.2d Cir.08/20/97), 700 So.2d 541.
Because Taylor's motion for reconsideration solely urged a claim of excessive sentence, he is relegated only to a claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993). In this case, Taylor faced a maximum sentencing exposure of thirty years at hard labor because of his adjudication as a second felony offender under the habitual offender law. Prior to imposing the maximum sentence, the court ordered and reviewed a pre-sentence investigation. Upon sentencing Taylor, the trial court listed the factors it considered for the sentence, including an undue risk that during the period of a suspended sentence or probation Taylor would commit another crime, that a lesser sentence would deprecate the seriousness of the defendant's crime and that Taylor was in need of correctional treatment. The court also considered Taylor's criminal history, and "the severity of this particular crime and the ones associated with it."[3]
We cannot find the imposed sentence to be excessive. At the time of this offense, Taylor was on parole for a crime of violence and had been out of jail only weeks before committing the present crime which involved the attempted dispersion of drugs into society. Obviously, Taylor failed to benefit or be rehabilitated by the prior leniency granted to him, and he directly exhibited a total disregard for the requirements of his parole within a short time of his release from prison. These facts support the trial court's determination that Taylor qualified as the worst type of offender. The sentence is affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The jury also acquitted Taylor of possession of cocaine.
[2] The state may choose which of these statutes to use in prosecuting a defendant. State v. Howard, 37,580 (La.App. 2d Cir.9/24/03), 855 So.2d 881. It is unclear on the record before us which statute the trial judge utilized in sentencing Taylor.
[3] The court declined to impose the sentence without benefit of probation or suspension of sentence in accordance with La. R.S. 15:529.1 G. However because the sentence was neither probated nor suspended, an amendment is unnecessary. State v. Washington, 39,581 (La.App. 2d Cir.3/2/05), 895 So.2d 691.