CARAWAY, J.
| t Michael Anthony Williams was convicted of possession with intent to distribute a Schedule I controlled dangerous substance (marijuana) and subsequently sentenced to 17 years’ imprisonment at hard labor with credit for time served. Williams appeals his conviction on the grounds that the evidence was insufficient to convict him. We affirm.

Facts

On December 4, 2009, the state filed a bill of information charging Michael Anthony Williams, and a co-defendant, Warren Carl Jefferson, with one count of possession with intent to distribute more than 60 but less than 2,000 lbs. of marijuana, in violation of La. R.S. JO^eetAXl).[1] The two men were stopped by Louisiana State Police in the early morning hours of October 16, 2009, after it was determined that the license plate on the trailer portion of the 18-wheeler tractor-trailer rig in which they traveled was suspended. After obtaining consent to search the truck, police discovered 106.8 lbs. of baled marijuana under the sleeper bed bunk. Jefferson eventually entered a guilty plea with an agreed suspended sentence in exchange for his testimony against Williams.
Williams’ case proceeded to trial on November 7, 2011. After hearing the evidence, the jury returned a verdict of guilty as charged by a 10-2 vote. On February 1, 2012, Williams was sentenced to 17 years’ | ¡¿imprisonment at hard labor with *766 credit for time served. The instant appeal followed.

Discussion

On appeal, Williams argues that the evidence was insufficient to prove that he had any knowledge of the presence of the marijuana in the truck other than Jefferson’s testimony, which should have been discounted as wholly unreliable considering his prior statements exonerating Williams and his receipt of a favorable plea bargain in exchange for his testimony.
The state’s evidence included the testimony of Sergeant John Peters, a member of the Louisiana State Police. On October 16, 2009, Peters was working on the criminal patrols unit as a canine handler. At approximately 5:00 a.m., Peters pulled over an 18-wheeler tractor-trailer rig on Interstate 20 in Ouachita Parish after determining that the license plate on the trailer was suspended. As a certified Department of Transportation level two inspector, Peters was also authorized to stop any commercial truck traveling within the State of Louisiana to check all driver and vehicle information, certifications, log books, and shipping information. When he approached the vehicle, Peters encountered the driver, Warren Carl Jefferson, and a second individual, Williams, who was lying in the sleeper bunk behind the driver. Peters informed the driver why he had stopped him and ascertained that the truck was returning from a trip to Houston where, Jefferson asserted, he had delivered a vehicle. Jefferson also stated that he and Williams, his co-driver, were on their way to Meridian, Mississippi. After |sobtaining Jefferson’s driver’s license, the trailer registration, a bill of lading, the truck’s log book, and the trailer’s VIN, Peters returned to his patrol car.
Peters testified that in running a check on Jefferson’s driver’s license he discovered that Jefferson had a criminal history which included charges of assault, battery, cruelty to a juvenile and a DUI. He also ascertained that the license plate on the trailer was not only suspended but was not registered to the VIN of the trailer, indicating that the trailer’s plate had been switched with that of another vehicle. Peters prepared a citation for the suspended plate and asked Jefferson to step to the back of the vehicle. After Peters informed Jefferson the citation was being issued to his company and not to Jefferson personally, Jefferson signed the citation and received his copy of same. Peters then asked Jefferson if they were carrying any weapons, alcohol, or drugs in the truck, which Jefferson denied. Peters also requested consent from Jefferson to a search of the tractor rig. Jefferson gave verbal consent and then signed a consent form confirming same.
Williams, who had remained in the truck, was asked to join Jefferson in front of Peters’ patrol unit. As Peters searched the passenger compartment, he lifted the mattress on the lower bunk on which Williams had been lying. Underneath, Peters found four duffle bags containing five “bales” of marijuana.
Thereafter, the truck was driven back to the Troop F headquarters where Trooper Steve Wallace was charged with removal of the suspected contraband from the truck. Wallace testified that he located and removed the duffle bags from under the lower bunk of the sleeper compartment of the |4tractor rig, photographing them both before and after their removal. He then removed the bales of marijuana from the bags, weighed them (106.8 lbs.) and secured them until they were later forwarded to the crime lab for analysis.
Wallace also testified that in his investigation he had researched the names of the companies on the truck and the bills of lading, respectively, and determined that *767 the addresses on record with the State of Georgia for each of these companies was the same address listed on Williams’ driver’s license. Lastly, Wallace testified that the amount of marijuana found in the truck and the method of packaging were inconsistent with personal use and indicated that the contraband was intended for distribution.
Susan Foley, a forensic chemist employed with the North Louisiana Crime Lab in West Monroe, testified that tests were conducted on samples from each of the five bales of marijuana and were determined to contain marijuana.
Jefferson testified for the state. According to Jefferson, the two met approximately five years earlier when Jefferson had worked for Williams’ trucking company for approximately six months. Jefferson had limited contact with Williams until just before the October 2009 trip to Houston. Earlier that month, Jefferson began doing clean-up work for Williams. Just before they traveled to Houston, Jefferson testified that Williams approached him and asked him to make the trip which Williams indicated was for the purpose of “[gjoing to get some marijuana.” Jefferson testified that he and Williams falsified a bill of lading to reflect that they were | ^making a delivery of a Volvo in Houston when they in fact had no load to deliver. Jefferson said he knew that as a commercial vehicle they could be stopped at any time and would have to present paperwork regarding what their cargo was and its destination.
Once in Houston, Jefferson testified that they made a stop at a truck stop where he ate and showered. Because he and Williams did not remain together during this time, he was not aware of the defendant’s whereabouts, but did state that Williams had possession of the keys to the truck. Later, Williams dropped Jefferson off in a neighborhood south of Houston and told him to wait there until he returned. When he did, the two headed back toward Atlanta, though Williams told Jefferson they would be making a stop in Meridian, Mississippi.
Jefferson testified that he did not know where in the truck the marijuana was, but suspected that it was in the frame of the doors. When he gave consent to Peters to search the truck, he did not believe they would find the marijuana.
Jefferson admitted that, contrary to his trial testimony, at his 72-hour hearing, he asserted to the court that Williams had no knowledge of the marijuana in the truck. He also admitted that he had prepared an affidavit and letter in which he claimed full responsibility for the marijuana found in the truck, asserting that Williams knew nothing about it. He claimed that in both of those documents he was lying.
The relevant portions of these documents which were introduced into evidence included the following statements by Jefferson:
|fiMr. Michael Williams was arrested and charged with conspiracy and distribute marijuana. That should not be true, for he had no knowledge of the marijuana that was stored in the truck after we droped (sic) our load off in Texas. It is unfair to charge him in connection of my wrongdoing. When he had nothing to do with it. I take fully responsibliy (sic).
I have submitted a written affidavit on the behalf of my co-worker, Mr. Williams. Freeing him on any willful knowledge of the marijuana that was in the rig that I was driving on the night of October 16, 2009, cause he didn’t know. Mr. A.D.A. I do request that you drop all charges against my co-worker, Mr. Williams and do the right thing. Free *768 him cause it is wrong to hold him away from his family; when he did nothing.
Jefferson testified that it was Williams’ idea for him to “take the rap” and that he agreed to do so in order to help the defendant. Jefferson testified that during their time in jail, Williams would purchase and provide him with things from the jail store, such as razors and other personal items. Lastly, Jefferson testified that the content of the documents was written by another inmate by the name of Samuel Johnson and that Jefferson had merely copied them into his own handwriting. Notwithstanding the contents of the documents, Jefferson subsequently entered a plea of guilty to an unspecified charge and received a 10-year probated sentence in exchange for his testimony against Williams.
The defense called two jail mates of the defendants to testify on Williams’ behalf. The first was Reginald Dorsey, a five-time felony offender, who testified that he heard Jefferson apologize to Williams for “bringing him into the situation” and stating that Williams did not know anything about the marijuana. He testified that he heard these statements both in the room he shared with Williams and at Bible class. The other |7witness was Samuel Johnson, the individual Jefferson alleged had helped him draft the affidavit and letters. Johnson denied having had anything to with the drafting of the documents other than supplying Jefferson with a dictionary and some paper. Johnson stated that he had heard Jefferson during “prayer call” asking for his fellow inmates’ prayers for having gotten “his boss locked up for my marijuana.” He also recalled Jefferson making similar “confessions” to Williams on various occasions. Johnson also said that Jefferson specifically admitted he loaded the marijuana in the truck when they stopped at the truck stop. As Johnson explained in his testimony, Williams owned a company and went to Texas to “redo some plates.” When they got to the truck stop, Williams left Jefferson there to “go get the paperwork done” during which is when Jefferson allegedly admitted to loading the drugs in the truck. On cross-examination, Johnson admitted to a criminal history that included convictions for aggravated flight from an officer, simple battery, unauthorized use of a vehicle, four DWIs and a cocaine-related charge.

Discussion

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181, writ denied, 08-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied 09-0725 (La.12/11/09), 23 So.3d 913; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 07-1209 (La.12/14/07), 970 So.2d 529.
*769 The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582, writ denied, 09-0372 (La.11/6/09), 21 So.3d 299.
laCircumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Speed, supra. A conviction based upon circumstantial evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, supra; State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 02-2595 (La.3/28/03), 840 So.2d 566, 02-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 06-1083 (La.11/9/06), 941 So.2d 35.
In Louisiana, an accomplice is qualified to testify against a co-perpetrator even if the state offers him inducements to testify. The inducements would merely affect the witness’s credibility. State v. Hughes, 05-0992 (La.11/29/06), 943 So.2d 1047. A conviction may be sustained by the uncorroborated testimony of an accomplice, although the jury should be instructed to treat the testimony with caution. State v. Hughes, supra; State v. Tate, supra. When the accomplice’s testimony is materially corroborated by other evidence, such language is not required. State v. Hughes, supra; State v. Castleberry, 98-1388 (La.4/13/99), 758 So.2d 749, cert. denied, 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999). An accomplice’s testimony is materially corroborated if there is evidence that confirms material points in an accomplice’s tale, and confirms the defendant’s identity and some relationship to the situation. State v. Hughes, supra; State v. Castleberry, supra.
A reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. State v. Sylvia, 01-1406 (La.4/9/03), 845 So.2d 358; State v. Smith, 600 So.2d 1319 (La.1992).
A person commits the crime of possession of marijuana with intent to distribute if he knowingly or intentionally possesses marijuana with the intent to distribute it. La. R.S. 40:966(A)(1). The state must prove that the defendant knowingly and intentionally possessed the drug and that he did so with the specific intent to distribute. State v. Robbins, 43,129 (La.App.2d Cir.3/19/08), 979 So.2d 630, 637, *770 State v. Taylor, 39,651 (La.App.2d Cir.4/6/05), 900 So.2d 212; State v. Johnson, 34,902 (La.App.2d Cir.9/26/01), 796 So.2d 201, writ denied, 03-2631 (La.11/8/04), 885 So.2d 1124; State v. Marshall, 02-1067 (La.App.5th Cir.2/25/03), 841 So.2d 881, writ denied, 03-0909 (La.9/26/03), 854 So.2d 345.
It is not necessary for the state to prove that the defendant was in actual possession of the contraband; rather, proof of constructive possession |nis sufficient. Constructive possession is shown when the state proves that the contraband was within the defendant’s dominion and control and that the defendant had knowledge of its presence. State v. Toups, 01-1875 (La.10/15/02), 833 So.2d 910; State v. Robbins, supra.
The mere presence of a person in the place where contraband is found or the mere association with another person possessing contraband is not sufficient to prove constructive possession. State v. Harris, 94-0970 (La.12/8/94), 647 So.2d 337; State v. Brown, 42,188 (La.App.2d Cir.9/26/07), 966 So.2d 727, writ denied, 07-2199 (La.4/18/08), 978 So.2d 347. Guilty knowledge is an essential element of a possession charge, and such knowledge may be inferred from the circumstances. State v. Toups, supra; State v. Taylor, supra. A determination of whether the defendant was in possession depends on the “peculiar facts” of each case, which may include the following: (1) the defendant’s knowledge that the contraband is in an area; (2) his relationship with the person found to be in actual possession; (3) his access to the area where the drugs were found; (4) evidence of recent drug use; and (5) the defendant’s physical proximity to the contraband. State v. Robbins, supra. Further, a defendant may have constructive possession if he willfully and knowingly shares the right to control the contraband with another. Id.
Louisiana courts have repeatedly held that guilty knowledge is an essential element of the crime of possession. State v. Edwards, 354 So.2d 1322 (La.1978). Guilty knowledge and intent, while questions of fact, need |12not be proven as a fact, but may be inferred from circumstantial evidence. State v. Sylvia, supra.
In this case, the chief element of proof corroborating Jefferson’s story is the testimony of Trooper Wallace which indicated that the truck in which the suspects had traveled to Houston and the two company names linked to the truck were all registered in Williams’ name. This evidence corroborates Jefferson’s claims that it was Williams who was the mastermind of the drug operation. Furthermore, Williams’ presence in the truck circumstantially and independently links him to the offense, as the marijuana was in the immediate area he occupied in the truck.
Jefferson admitted to the jury that he had lied on numerous occasions about his and Williams’ involvement in the crime. Yet, there was no evidence in this case of any particular animosity between the witness and the defendant and the documents prepared by Jefferson give no factual detail about how Jefferson hatched or carried out the scheme. The jury was made aware of Jefferson’s deal with the state and the advantage he obtained by testifying.
As to the contradiction of Jefferson’s testimony by cellmates Dorsey and Johnson, the jury had similar reason to discredit their testimony. Both failed to give any credible detail about how Jefferson had caused Williams to be an unwitting participant in the crime. Even if believed, Jefferson’s alleged statements were made at a time when he admitted he *771 was lying and were part of his purported scheme to protect his boss and possibly obtain continued financial support for necessities that Williams was providing. | ^Considering the time and context of the alleged statements overheard by the cellmates and the lack of specific detail given by these witnesses, the jury was not unreasonable in discounting the accuracy of the cellmates’ recollection of Jefferson’s statements.
From the undisputed evidence of the men’s action in concert for their trip to Houston and Williams’ connection with the truck, the jury could choose to reject the defense evidence on credibility grounds and accept the testimony of Jefferson linking the actions of both men to the crime. This assignment of error is without merit.

Decree

For the foregoing reasons, we affirm Williams’ conviction and sentence.
AFFIRMED.

. The weight provision contained in the original bill of information was struck through in an amended bill of information filed on November 8, 2011, the day after Williams' trial commenced.