STONE, J.
hThe defendant, Deterrance T. Purvis, was convicted by a jury of possession of marijuana with intent to distribute, in violation of La. R.S. 40:966(A)(1), and sentenced to 15 years at hard labor. Purvis was also convicted of resisting an officer, in violation of La. R.S. 14:108, and sentenced to six months in parish jail. For the following reasons, Purvis’ convictions and sentences are affirmed.
FACTS
On July 27, 2015, Caddo Parish Sheriffs officers, in a joint effort with the Shreveport Police Department, were en route to conduct a drug bust at Pinky’s, a store located near the intersection of Alabama and Poland Streets. This particular area was targeted because of numerous complaints of drag activity. While approaching Pinky’s, officers observed three men standing around an illegally parked Chevrolet Suburban (“Suburban”). After the officers approached the Suburban, one of the men, Purvis, consented to being searched. The search uncovered 14 individual bags of marijuana in Purvis’ back pocket. Thereafter, Purvis was arrested.
Purvis was charged by bill of information with possession of marijuana with intent to distribute and felony resisting an officer with force or violence. Purvis subsequently filed a motion to suppress, alleging he was unlawfully stopped and searched and urged the trial court to exclude any evidence concerning the recovered marijuana. After a hearing on the motion, the trial court denied Purvis’ request.
The jury found Purvis guilty of possession with intent to | ¡..distribute and the lesser responsive charge of misdemeanor resisting an officer. He was sentenced to 15 years at hard labor for possession with intent to distribute and 6 months in a parish jail for resisting an officer. Purvis now appeals.
DISCUSSION
Assignment of Error # 1
Purvis argues the evidence presented at trial was insufficient to support a verdict of possession of marijuana with intent to distribute.[1] According to Purvis, while the state demonstrated he was in possession of marijuana, they failed to show he intended to sell it. He emphasizes that no scales, money, or other paraphernalia associated with selling drugs were found at the scene.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the case in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Carter, 42,894 (La.App. 2 Cir. 01/09/08), 974 So.2d 181, writ denied, 08-0499 (La. 11/14/08), *624 996 So.2d 1086. This standard, now legislatively embodied in La. C.Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La. 02/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La. App. 2 Cir. 01/14/09), 1 So.3d 833, writ denied, 09-0310 (La. 11/06/09), 21 So.3d 297.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442. |aA reviewing court affords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App. 2 Cir. 02/25/09), 3 So.3d 685, writ denied, 09-0725 (La. 12/11/09), 23 So.3d 913; State v. Hill, 42,025 (La.App. 2 Cir. 05/09/07), 956 So.2d 758, writ denied, 07-1209 (La. 12/14/07), 970 So.2d 529.
La. R.S. 40:966(A)(1) provides:
(A) Except as authorized by this Part, it shall be unlawful for any person knowingly or intentionally:
(l)To produce, manufacture, distribute or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule I [.]
When determining whether a defendant is in possession with intent to distribute, the state must prove that the defendant knowingly possessed the drug with the specific intent to distribute it. State v. Taylor, 39,651 (La.App. 2 Cir. 04/06/05), 900 So.2d 212; State v. Johnson, 34,902 (La.App. 2 Cir. 09/26/01), 796 So.2d 201, unit denied, 03-2631 (La. 11/08/04), 885 So.2d 1124.
Specific intent to distribute may be inferred from the circumstances surrounding the transactions and the actions of the defendant. State v. Allen, 41,548 (La.App. 2 Cir. 11/15/06), 942 So.2d 1244; Taylor, supra. When relying on circumstantial evidence, the state must prove that the amount of the substance and the manner in which it was carried/packaged was inconsistent with personal use. State v. Moore, 40,311 (La.App. 2 Cir. 01/13/06), 920 So.2d 334. The test for determining whether intent to distribute exists includes five factors: (1) packaging in a form usually associated with distribution; (2) evidence of other sales or attempted sales by the defendant; (3) a large amount or quantity of the drug such as to create an | inference of intent to distribute; (4) expert or other testimony that the amount was inconsistent with personal use; and (5) the existence of any paraphernalia, such as baggies or scales, evidencing an intent to distribute. Moore, supra.
At trial, Agent John Witham (“Agent Witham”) of the Caddo Parish Sheriffs Office Narcotics Division testified that, on the night in question, while traveling east Poland Street towards Pinky’s, he observed a Suburban parked in a no parking zone and facing the wrong direction. He further observed several people gathered around the Suburban, and the Suburban doors were open. Agent Witham testified that as he drove by, he rolled down his window and shined his flashlight on the people around the Suburban. He stated he smelled marijuana, but did not stop because he was expected at Pinky’s. Agent Witham instead alerted the police unit following him that he smelled marijuana around the Suburban and advised the officers to make contact with the group of people.
Agent Stacey Coleman (“Agent Coleman”) testified that he was driving behind *625 Agent Witham. According to Agent Coleman, after Agent Witham flashed his light on the Suburban, Purvis, who had been standing near the opened passenger side door, hurriedly moved away from the Suburban and appeared to be trying to distance himself from the vehicle. Agent Coleman activated his lights and siren and summoned Purvis to his patrol vehicle. He then ordered Purvis to place his hands on the vehicle and began frisking him.
Agent Coleman stated that while frisking Purvis, he felt a large bulge in Purvis’ rear right pocket. According to Agent Coleman, Purvis consented to being searched and Agent Coleman removed a purple Crown Royal bag Rfrom Purvis’ pocket. Inside the bag, Agent Coleman discovered 14 individual bags of marijuana, having a total weight of 28 grams. Agent Coleman testified that when he attempted to arrest and handcuff Purvis, Purvis fled. A foot pursuit ensued for two blocks. While running, Purvis fell to the ground, and Agent Coleman fell on top of Purvis to prevent his further escape. Purvis began elbowing the agent’s waist and neck, refusing to be handcuffed.[2] With the assistance of a fellow police officer, Agent Coleman was able to handcuff Purvis. During Pur-vis’ return to the Suburban, Agent Coleman read Purvis his Miranda rights. Agent Coleman indicated that after he Mimndized Purvis, Purvis freely and voluntarily confessed that the 14 bags of marijuana belonged to him and that he sold drugs for money.
Agent Carl Townley (“Agent Townley”), a lieutenant with the Caddo Parish Sheriffs Office, testified that when examining a scene and determining whether a person is in possession of marijuana versus selling marijuana, he looks at the packaging, defendant’s statements, and what evidence is present—or not present—at the scene. Agent Townley testified that he was present during Purvis’ arrest and paraphernalia consistent with personal consumption, such as smoking devices, were not found in or near the Suburban. In his expert opinion, the 14 individual bags containing approximately 2 grams of marijuana each, were previously weighed and packaged for sale, not personal use. He testified that if the marijuana had [r,been intended for personal consumption, the drugs would be in one small serving bag instead of the smaller individual bags.[3]
The state presented sufficient evidence for a jury to find Purvis guilty of possession with intent to distribute. As noted by Agent Townley, to determine whether drugs are being used for personal consumption or for distribution, one must look at the totality of the circumstances. Here, it is not disputed that Purvis was in possession of marijuana. Purvis confessed that he is a drug dealer, and he was arrested in an area known for street-level drug activity. The marijuana was in 14 individual 2-gram bags, not in one small bag. Furthermore, no smoking devices or paraphernalia, which are necessary for personal usage, were found at the scene. These things taken together provide enough circumstantial evidence to infer that Purvis had the requisite intent to distribute the 14 bags of marijuana. The jury apparently accepted Agents Coleman and Townley’s testimonies as credible and found that Purvis was in possession with intent to distribute beyond a reasonable doubt.
*626 Assignment of Error # 2
Purvis argues the trial court erred in denying his motion to suppress evidence of the marijuana on the basis that the officers lacked reasonable suspicion to stop Purvis and lacked probable cause for his arrest. Purvis argues Agent Coleman’s only justification for stopping and frisking him was Purvis “walking away from a vehicle.” He contends that this does not 17amount to reasonable suspicion, and Agent Coleman had no grounds to frisk Purvis.
It is well established that a law enforcement officer may temporarily detain and interrogate persons reasonably suspected of criminal activity. La. C. Cr. P. art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Elliott, 09-1727 (La. 03/16/10), 35 So.2d 247. Before such investigatory stop may occur, it must be based on reasonable belief that the suspect has been, is, or is about to commit a crime. State v. Lewis, 32,211 (La.App. 2 Cir. 08/18/99), 738 So.2d 1212, 1214. Reasonable cause for such a stop is something less than probable cause, but the detaining officer “must have ‘artic-ulable knowledge’ of particular facts that, in conjunction with reasonable inferences, provide reasonable grounds to suspect the detainee of criminal activity.” Id. Specifically, a court must objectively look at all of the information known to the law enforcement officer involved in the stop. Elliot, supra.
An individual’s presence in a high-crime area, or nervous/evasive behavior, alone is insufficient to justify an investigatory stop. State v. Morgan, 09-2352 (La. 03/15/11), 59 So.3d 403. Both activities, however, may be highly suspicious and may be one of several factors considered when finding reasonable suspicion. State v. Belton, 441 So.2d 1195 (La. 1988); Morgan, supra. Moreover, the Louisiana Supreme Court has “expressly held or at least implied” that a defendant’s flight from a police officer is the most important factor when examining the totality of the circumstances. Morgan, supra.
Probable cause to arrest an individual exists when reasonable and trustworthy facts known to the officer cause him to believe that the | sindividual has committed an offense. State v. Surtain, 09-1835 (La. 03/16/10), 31 So.3d 1037.
The trial court properly denied the motion to suppress. The police had reasonable suspicion to stop Purvis based on the totality of the circumstances. Purvis was stopped in a high-crime area where numerous complaints had been made concerning drug dealing and activity. Agent Witham noticed the Suburban was illegally parked and obstructing traffic and smelled marijuana emanating from the vehicle as he drove by. In addition, after Agent Wit-ham shined his light on the group and informed Agent Coleman of his observations, Agent Coleman witnessed Purvis hurriedly walk away from the vehicle. The circumstances support Agent Coleman’s reasonable suspicion that Purvis may be engaged in criminal activity and his decision to stop and frisk Purvis for officer safety. Furthermore, upon feeling a large bulge in Purvis’ right rear pocket, Agent Coleman obtained Purvis’ verbal consent before reaching into his pocket. As a result, both the stop and the subsequent seizure were lawful, and the trial judge was correct in denying Purvis’ motion to suppress.
Finally, Purvis briefly argues the lack of reasonable suspicion to stop and frisk him means Agent Coleman lacked probable cause to arrest him. As previously explained, Agent Coleman possessed reasonable suspicion to conduct a stop and frisk. The subsequent search of Purvis’ pocket *627 was valid and resulted in discovery of marijuana. Thus, there existed reasonable and trustworthy facts to support a finding of probable cause to arrest Purvis.
| ^Assignment of Error # S
Lastly, Purvis argues that, despite having a criminal history, a 15-year sentence for the possession of 28 grams of marijuana is excessive. According to Purvis, the trial court did not adequately consider any possible mitigating factors because it did not order a presentence investigation (PSI) and instead, only considered his prior convictions.
La. C. Cr. P. art. 881.1 precludes a defendant from presenting sentencing arguments to the court of appeal which were not presented to the trial court. Accordingly, when a defendant fails to file a motion to reconsider sentence, the appellate court’s review of a sentencing claim is limited to the bare claim that the sentence is constitutionally excessive. State v. Mims, 619 So.2d 1059 (La. 1993); State v. Jones, 41,449 (La.App. 2 Cir. 09/20/06), 940 So.2d 61; State v. Duncan, 30,453 (La. App. 2 Cir. 02/25/98), 707 So.2d 164.
Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense, or shocking to the sense of justice. State v. Lobato, 603 So.2d 739 (La. 1992); State v. Livingston, 39,390 (La.App. 2 Cir. 04/06/05), 899 So.2d 733; State v. White, 37,815 (La.App. 2 Cir. 12/17/03), 862 So.2d 1123.
A sentence violates La. Const, art. I § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than the purposeless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La. 1993). A sentence is grossly disproportionate if, when the crime and punishment are viewed in light of the harm to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La. 01/15/02), 805 So.2d 166.
| ipThe trial court is given wide discretion in the imposition of sentences within the statutory limits. Such a sentence will not be set aside as excessive absent a manifest abuse of that discretion. State v. Williams, 03-3514 (La. 12/13/04), 893 So.2d 7; State v. Diaz, 46,750 (La.App. 2 Cir. 12/14/11), 81 So.3d 228.
At sentencing, the trial court noted Pur-vis was previously convicted of (1) illegal use of a weapon in 2007, (2) attempted possession with intent to distribute in 2008, and (3) illegal use of a firearm in 2014. Despite his criminal record, Purvis argued he was remorseful for his actions and could be rehabilitated. However, the trial court stated that regardless of Purvis’ remorse, it could not ignore Purvis’ previous record, and concluded Purvis is in need of correctional treatment in a custodial environment.
At the time of Purvis’ offenses, a person convicted of possession with intent to distribute marijuana could be imprisoned for not less than 5 years and no more than 30 years at hard labor and is subject to pay a fine of not more than $50,000.00. La. R.S. 40:966(B)(3). Purvis’ 15-year sentence for possession with intent to distribute is well within the sentencing ranges. Considering Purvis’ previous criminal history, the trial court did not abuse its discretion in sentencing him.
CONCLUSION
For the foregoing reasons, the convictions and sentences of Deterrance T. Pur-vis are affirmed.
AFFIRMED.

. While Purvis assigns as error the sufficiency of evidence on his resisting an officer conviction, he does not argue the merits of that conviction. As such, it is deemed abandoned.

. According to Coleman, Purvis resisted arrest so violently that all Coleman could do was grab "his arms just to hold on” until assistance arrived.

, After Agent Townley’s testimony, the parties stipulated that the substance seized from Pur-vis was marijuana.