STEWART, J.
|/The defendant, Troy Ray Lewis, was convicted of possession of crack cocaine, more than 28 grams but less than 200 grams, in violation of La. R.S. 40:967(F)(l)(a), and distribution of crack cocaine, in violation of La. R.S. 40:967(A)(1).[1] For the possession of crack cocaine conviction, the defendant was sentenced to 25 years’ imprisonment, with the first five years without benefit of probation, parole, or suspension of sentence, and fined the mandatory minimum of $50,000.00. For the distribution of cocaine conviction, he was sentenced to 25 years’ imprisonment, with the first two years without benefit of probation, parole, or suspension of sentence, and fined $50,000.00, or ordered 60 days’ imprisonment in lieu of the fine. The trial court ordered that the sentences run concurrently. For the reasons discussed below, we affirm the defendant’s convictions, and affirm his sentences as amended.
FACTS
On August 31, 2010, at approximately 5:15 p.m., a “buy/bust” operation was conducted by the Caddo Parish Sheriffs Office (“the Sheriffs Office”), in conjunction with the Shreveport Police Department (“SPD”). During this operation, Corporal Steve McKenna of the SPD and a confidential informant met with Harry “Red” Scott to buy crack cocaine. The following evidence was adduced at trial.
McKenna, who was wearing a wire at the time of the meeting, testified that Scott, after being asked to secure crack cocaine, stated that he [2needed to contact “his guy.” Scott then walked into 1626 *485 Rex Street, which McKenna presumed was his house. McKenna stated that he believed that Scott made contact with another person.
Shortly thereafter, Scott returned to' McKenna’s truck, climbed into the back of the pickup truck, and directed the confidential informant to drive to a specific intersection. McKenna stated that this location was approximately less than half a mile away, and that Scott told him and the confidential informant to remain in their vehicle. After receiving money from McKenna, Scott exited the vehicle and walked down the street. After McKenna relayed this information to Agent John Witham of the Sheriffs Office, who was the supervisor of the buy/bust operation, he and the confidential informant cautiously followed Scott in their vehicle.
McKenna testified that he witnessed Scott and an African American male engage in a hand-to-hand transaction in the front yard of 282 East Boulevard. McKenna stated that he later identified the African American male as the defendant.
In describing this observation, McKenna stated:
I seen Mr. Lewis cupped his hand and ended up giving an item to Mr. Harry Scott. At that time once he grabs it, looked like the money was also handed to — appeared to be handed to Mr. Lewis, and then he turned around and began walking off.
After returning to the vehicle, Scott handed .5 grams of crack cocaine to McKenna, and was immediately arrested. Based on McKenna’s observation of the drug transaction in the front yard of the residence, a search warrant was secured for the house at 232 East Boulevard.
IsThe search warrant was executed a couple of hours later, at approximately 8:40 p.m. The following persons were present at the location: Connie Lewis, the defendant’s mother and the owner of the home; Willie Mae King, the defendant’s aunt and Ms. Lewis’s sister; Katie Anderson, the defendant’s aunt and Ms. Lewis’s sister; and the defendant. In addition, Donald Harris, a local handyman, and Troy Duray Wallace, the defendant’s son, were in the carport area.
Witham and McKenna were both present during the execution of the search warrant. Witham noted that the defendant was seen exiting the room where the officers found “a pretty good amount of crack cocaine.”
McKenna stated that he made contact with the defendant, while he was lying in the hallway. He testified that he immediately recognized the defendant as the male who gave the crack cocaine to Scott earlier that day in the front yard of the home. McKenna stated that “there was no doubt in his mind,” regarding the defendant’s identity.
The room that the defendant was observed exiting by Witham was searched. According to Witham, the reports stated that a digital scale was found in a shirt pocket.[2] Police also discovered two packages containing a white rock substance in a dresser drawer located in the middle room. Both packages respectively tested positive as crack cocaine. Witham testified that the street value of the crack cocaine was roughly $8,500.00.
*486 |4McKenna testified that he discovered a “document of residency,” namely, a Metro PCS cell phone bill. He explained that “the starter of service request is Troy Wallace at 232 East Boulevard, Shreveport, Louisiana.”
. A search was also conducted of a vehicle on the premises. The vehicle, which Wit-ham described as a truck, was registered to the defendant. Even though the police recovered $1,295.00 in the armrest, none of the money was part of the controlled drug buy made earlier that day with Scott. Furthermore, the buy funds were never recovered.
Bruce Stenz, a forensic chemist with the North Louisiana Crime Laboratory in Shreveport, testified as an expert witness in forensic chemistry and drug analysis. Stenz testified that a total of three plastic packages containing a white substance were submitted for an analysis. These included a package containing 0.5 grams of crack cocaine from the initial transactions, a package containing 54.7 grams, and a package containing 30.32 grams, all of which tested positive for crack cocaine.
Lieutenant Carl Townley, employed by the Caddo Shreveport Narcotics Task Force and lieutenant over the street level interdiction unit and the drug unit commander for the Office, qualified as an expert in undercover techniques, buy/bust operations, search warrant executions, and SRT techniques. He testified that 85 grams of crack cocaine has a street value of $8,500.00, and -that it would be 850 individual units, translating into “850 hits.” He further testified that the amount was not consistent with | ¿¡personal consumption and that no smoking devices were present in the home.
Townley stated that electronic scales were more likely to be in the possession of a drug dealer, as opposed to a “crackhead,” who will generally “take the little rock from the dealer.” He opined that the evidence collected demonstrated a distribution of cocaine, and that the disappearance of the buy funds was normal and depended on how much dope was being sold.
Connie Lewis testified that she had surgery in April of 2010, and that some of her family members would periodically stop by to help her. She also testified that other family members were staying at her house for her family’s annual family reunion that took place during Labor Day weekend.
Ms. Lewis testified that Donald Ray Harris helped her with household chores, and that he was outside of her home when the police entered the residence. She testified that the defendant, and her grandson Troy Wallace, were not staying at her home. She commented that the defendant lived in Texas, and that on the occasions when he did visit, he would normally stay in the “front room” of her home. Mrs. Lewis testified that she did not know whom the crack cocaine belonged to.
Troy Duray Wallace testified that he is currently a college student, that he did not have a criminal record, and that he had been a resident of Texas for 22 years. Wallace testified that he rode with his father, the defendant, to Shreveport to visit his grandmother, who was in poor health. He stated that they traveled in his mother’s car. He identified the vehicle as a Mercedes. Wallace denied that he and his father transported any illegal |fidrugs, and claimed that the money discovered in the vehicle derived from his father’s recently cashed $1,200.00 check from his job at Pilgrim’s Pride.
Wallace testified that he was staying in the middle room of his grandmother’s home. Although there was a dresser in the room, Wallace testified that he had never used' it. Wallace denied being in *487 volved in the sale of narcotics, further testifying that he did not own a digital scale, that he had never seen his father with crack cocaine, and that his father has held the same job for several years.
The jury found the defendant gúilty as charged. At the time of the defendant’s sentencing hearing, the previously requested presentence investigation report (“PSI”) had not yet arrived. The defendant insisted that he be sentenced anyway, because “he had been locked up for months” and because “he wanted to move on with his appeal.” Although he didn’t advise it, the judge did inform the defendant that he could sentence him without considering the PSI. The defendant’s attorney stated that without the PSI, he was not prepared for sentencing and requested that a sentencing hearing be held once the PSI was obtained. However, the defendant again demanded that he be sentenced that day, over objections by his attorney, and after being advised of the sentencing ranges and mandatory fíne. Specifically, there was the possibility that the sentences imposed could be run consecutively, and the state could file a multi-bill. Lewis affirmed his decision to waive any delay and a sentencing hearing.
The judge stated that he had considered the sentencing factors found in La. C. Cr. P. art. 894.1, the defendant’s age of 44 years, his current 17convictions, his “priors” as listed on his rap sheet, and the fact that the state could file a habitual offender bill.
For the offense of possession of crack cocaine of more than 28 grams, the defendant was sentenced to 25 years at hard labor, with the first five years without benefit of probation, parole, or suspension of sentence. For the offense of distribution of a Schedule II CDS, the defendant was sentenced to 25 years at hard labor, with the first two years without benefit of probation, parole, or suspension of sentence. The sentences were ordered to run concurrently. In addition, the defendant was ordered to pay $50,000 on each count, or serve an additional 60 days in jail.
On November 5, 2012, the defendant filed a motion to reconsider sentence and asked the court to reduce the terms of imprisonment imposed on each count. The motion was denied on November 9, 2012.
On May 16, 2013, Lewis filed a letter titled “My Brief Letter,” and mailed a second letter on May 23, 2012. Both letters contained allegations amounting to claims of insufficient evidence, an issue more fully addressed in the assignments raised by his appellate counsel, and ineffective assistance of counsel, which he fails to argue.
The defendant now appeals his convictions and sentences.
LAW AND DISCUSSION

Insufficiency of Evidence

In the defendant’s first assignment of error, he asserts that the evidence was insufficient to convict him of possession of a controlled | «dangerous substance of more than 28 grams and possession of that controlled dangerous substance with intent to distribute.
When issues are raised on appeal, both as to the sufficiency of evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 *488 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833. On appeal, a reviewing court must view the evidence in the light most favorable to the state and must presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. Jackson, supra.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, cert. denied, — U.S.-, 130 S.Ct. 3472, 177 L.Ed.2d 1068 (2010); State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. Direct evidence provides proof of the existence of a fact, for example, a witness’s testimony that he saw or heard something. State v. Lilly, 468 So.2d 1154 (La.1985). Circumstantial evidence provides proof of collateral facts and circumstances, from which the existence of the main fact may be inferred according to reason and common experience. Id. When the conviction is based on circumstantial evidence, La. R.S. 15:438 states:
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.
La. R.S. 15:438 does not establish a stricter standard than Jackson v. Virginia, supra. Rather, it serves as a helpful evi-dentiary guide for jurors in evaluating circumstantial evidence. State v. Major, 2003-3522 (La.12/1/04), 888 So.2d 798.
When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by the evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/6/09), 21 So.3d 299. This is not a separate test that applies instead of a 1 insufficiency of the evidence test when circumstantial evidence forms the basis of the conviction. Id. Rather, all of the evidence, both direct and circumstantial, must be sufficient under Jackson to convince a rational juror that the defendant is guilty beyond a reasonable doubt. Id.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, supra; State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d *489 Cir.2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35.
The fact finder is charged with making a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; thus, the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Eason, supra; State v. Casey, 99-0023 (La.01/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
La. R.S. 40:967(F)(l)(a) provides:
a. Any person who knowingly of intentionally possesses twenty-eight grams or more, but less than two hundred grams, Inof cocaine or of a mixture or substance containing a detectable amount of cocaine or of its analogues as provided in Schedule 11(A)(4) of R.S. 40:964, shall be sentenced to serve a term of imprisonment at hard labor of not less than five years, nor more than thirty years, and to pay a fine of not less than fifty thousand dollars, nor more than one hundred fifty thousand dollars.
La. R.S. 40: 967(A)(1) states:
A. Manufacture; distribution. Except as authorized by this Part or by Part VII-B of Chapter 5 of Title 40 of the Louisiana Revised Statutes of 1950, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule II;
To support a conviction for possession of a CDS the .state must prove the defendant was in possession of the illegal drug and that he knowingly possessed the drug. The state need not prove that the defendant was in actual physical possession of the drugs found; constructive possession is sufficient to support a conviction. State v. White, 37,261 (La.App.2d Cir.6/25/03), 850 So.2d 987; State v. Matthews, 552 So.2d 590 (La.App. 2d Cir.1989), writ denied, 559 So.2d 137 (La.1990). Constructive possession is defined as having an object subject to one’s dominion and control, with knowledge of its presence, even though it is not in one’s physical possession. State v. Mingo, 42,407 (La.App.2d Cir.9/19/07), 965 So.2d 952; State v. White, supra. The mere presence of someone in the area where the CDS is found, or the mere association with the person found to be in possession of it is insufficient to constitute constructive possession. State v. Harris, 94-0970 (La.12/8/94), 647 So.2d 337. Guilty knowledge is an 112essential element of a possession charge, and such knowledge may be inferred from the circumstances. State v. Robbins, 43,129 (La.App.2d Cir.3/19/08), 979 So.2d 630; State v. Taylor, 39,651 (La.App.2d Cir.4/6/05), 900 So.2d 212.
 A determination of whether the defendant was in possession depends on the “peculiar facts” of each case, which may include the following: (1) the defendant’s knowledge that the contraband is in an area; (2) his relationship with the person found to be in actual possession; (3) his access to the area where the drugs were found; (4) evidence of recent drug use; and (5) the defendant’s physical proximity to the contraband. State v. Robbins, supra; State v. Taylor, supra. Further, a defendant may have constructive possession if he willfully and knowingly shares the right to control the contraband with another. Id.
Five factors have been identified as useful in determining whether circumstantial *490 evidence is sufficient to prove intent to distribute CDS. The factors include: (1) whether the defendant ever distributed or attempted to distribute the controlled dangerous substances; (2) whether the drug was in a form usually associated with possession for distribution to others; (8) whether the amount of the drug creates an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of the drug found in the defendant’s possession is inconsistent with personal use; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute. State v. Cummings, 46,038 (La.App.2d Cir.1/26/11), 57 So.3d 499, writ denied, 2011-0341 (La.6/17/11), 63 So.3d 1037.
Testimony of street value and dosage of the drug is also relevant to the issue of intent to distribute. State v. Gladney, 29,791 (La.App.2d Cir.9/24/97), 700 So.2d 575. Mere possession of contraband does not amount to evidence of intent to distribute “unless the quantity is so large that no other inference is possible.” State v. Greenway, 422 So.2d 1146 (La.1982).
La. C.E. art. 701 permits a law enforcement officer to express an opinion regarding matters of personal knowledge gained through experience, even if the witness is not first qualified as an expert. State v. Lowery, 609 So.2d 1125 (La.App. 2d Cir.1992), writs denied, 617 So.2d 905 (La.1993).
The record supports the defendant’s conviction for both offenses. In determining whether the defendant distributed the .5 grams, the jury heard the testimonies of Officers McKenna and Wit-ham. Based on these officers’ personal knowledge gained through experience, the jury found them to be credible in their accounts of the drug buy.
McKenna testified that he used Scott to get some crack cocaine, and that Scott stated that he needed to contact his supplier. Soon thereafter, he witnessed Scott engage in a hand-to-hand transaction with the defendant, during which he handed “an item” to Scott. McKenna further testified that Scott immediately returned to the vehicle and gave him .5 grams of crack cocaine.
| MLater that day, both McKenna and Witham observed the defendant inside the house, and within close vicinity of the bedroom where the packages of crack cocaine and electronic scales were discovered. Witham stated that he observed the defendant coming out of the room where the cocaine was found. After reviewing the record, we find that the essential elements of the crime of distribution of a controlled dangerous substance, namely crack cocaine, were proven beyond a reasonable doubt.
With regard to the constructive possession of the cocaine packages, the state presented evidence that the defendant was seen emerging from the bedroom where the drugs were found. This fact, combined with the fact that he had been seen selling crack cocaine outside the house earlier in the day, provided sufficient evidence from which the jury could have found, beyond a reasonable doubt, that the crack cocaine was subject to the defendant’s dominion and control. Furthermore, the jury’s decision to believe Wallace’s denial of knowledge of the cocaine must be given great weight. With respect to intent to distribute, Townley testified that 85 grams of crack cocaine has a street value of $8,500.00, that it would be 850 individual units, translating into “850 hits.” He noted that this amount was not consistent with personal use and that no smoking devices were present in the home.
*491 After a careful review of the record, we find that the testimony and evidence presented overwhelmingly satisfied the state’s burden of proving the essential elements of the charged offenses of possession of more than 28 grams of a Schedule II CDS, crack cocaine, and possession of a Schedule II |lsCDS, crack cocaine, with the intent to distribute. Accordingly, this assignment of error is without merit.

Excessiveness of Sentence

In the second assignment of error, the defendant asserts that the sentences imposed are harsh and constitutionally excessive. More specifically, he asserts that the trial court imposed near-maximum sentences on each count without the benefit of a PSI.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, this court will not set aside a sentence as excessive. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7; State v. McCall, 37, 442 (La.App. 2 Cir. 8/20/03), 852 So.2d 1162, writ denied, 04-0039 (La.12/17/04), 888 So.2d 858. On review, the appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. Id.
In reviewing claims of an excessive sentence, an appellate court uses a two-step process. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reveals that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dillard, 45,633 (La.App.2d Cir.11/3/10), 55 So.3d 56.
The articulation of the factual basis for a sentence is' the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence | ^imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant’s personal history (his age, family ties, marital status, health, employment record), criminal history, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Dillard, supra.
Second, a sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless' infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A trial court has broad discretion in sentencing offenders. Absent a showing of manifest abuse of that discretion, an appellate court may not set aside a sentence as excessive. State v. Kidd, 45,638 (La.App.2d Cir. 11/3/10), 55 So.3d 90.
As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the .worst offenses. State v. Young, 46,575 (La.App. 2 Cir. 9/21/11), 73 So.3d 473; State v. Cozzetto, 07-2031 (La.2/15/08), 974 So.2d 665.
As we stated in the previous assignment, La. R.S. 40:967(F)(l)(a) states that a person convicted of possession of crack cocaine “shall be sentenced to serve a term of imprisonment at hard labor of not less than five years, nor more than thirty years, and to pay a fine of not less than fifty thousand dollars, nor more than one hundred fifty thousand dollars.” | i7Pursuant to La. R.S. 40: 967(A)(1), a person convicted of distribution of crack cocaine “shall be sentenced to a term of *492 imprisonment at hard labor for not less than two years nor more than thirty years, with the first two years of said sentence being without benefit of parole, probation, or suspension of sentence; and may, in addition, be sentenced to pay a fine of not more, than fifty thousand dollars.”
In this case, the defendant was sentenced to 25 years’ imprisonment at hard labor, the first five years being without benefits, and the mandatory minimum fine of $50,000, for his conviction of possession of crack cocaine more than 28 grams. He was also sentenced to 25 years’ imprisonment at hard labor, the first two years being without benefits, and the optional maximum fine of $50,000. These sentences were ordered to be served concurrently. We note that both of these sentences are within the.sentencing guidelines.
As we stated in the facts portion of this opinion, the defendant was sentenced without the benefit of a PSI. The defendant did insist that the trial court proceed without reviewing the PSI, even after the trial court and defense counsel advised the defendant to wait for the PSI. The defense attorney even objected to the defendant being sentenced that day, after expressing that he was not prepared for sentencing without it: '
Your Honor, the last we were here, we were still waiting on a PSI, which I had not received. And I know the State was attempting to find some information about priors. And without looking at those, I’m not prepared, and neither is Mr. Lewis, for a sentencing today. I probably would request a hearing after viewing those documents anyway.
| ^Despite the insistence of the defendant, the trial court should have used its discretion and postponed sentencing until after it had the opportunity to review the PSI, and after a sentencing hearing.
The defendant was informed that he could potentially be sentenced to 30 years for each count,-for a total of 60 years, if given consecutive sentences. Additionally, the trial court stated that portions of the sentences would be served without benefits, and that the state could possibly file a habitual offender bill. The record indicates no articulation of aggravating or mitigating circumstances. Further, there was no consideration of the defendant’s personal history, family history, or employment history.
We note that the trial court was able to discern, from the defendant’s rap sheet, that he had other drug charges pending and at least one felony conviction. After considering the defendant’s sentencing exposure, we nevertheless find that the trial court’s sentencing method was not manifestly erroneous. In future cases similar to this one, we caution the trial court not to sentence a defendant in the absence of a PSI and a sentencing hearing.
Considering the defendant’s maximum sentence exposure of 60 years’ imprisonment, coupled with a potential $200,000 fine, we find that his imposed sentence was not harsh. However, an indigent defendant cannot be subjected to default time in lieu of the payment of a fine, costs, or restitution. State v. Davenport, 43,101 (La.App.2d Cir.3/19/08), 978 So.2d 1189, twit denied, 2008-1211 (La.1/30/09), 999 So.2d 748; State v. Mack, 30,832 (La.App.2d Cir.6/24/98), 715 So.2d 126. A defendant’s claim of indigence in such a situation may be discerned from the record. State v. Williams, 484 So.2d 662 (La.1986); State v. Kerrigan, 27,846 (La.App.2d Cir.4/3/96), 671 So.2d 1242. Where a defendant is represented by the Indigent Defender’s Office, a court-appointed attorney, and the Louisiana Appellate Project, this court has considered it error for a trial *493 court to impose jail time for failure to pay court costs. Kerrigan, supra. In the context of disposition of this claim, this court may choose to amend the defendant’s sentence. State v. Tillman, 43,569 (La.App.2d Cir.10/22/08), 997 So.2d 144. In the instant case, it appears that the defendant is indigent. He was represented at trial by a public defender and represented on appeal by the Louisiana Appellate Project. Accordingly, the portion of the defendant’s sentence ordering jail time in default of payment of his fines is vacated.
CONCLUSION
For the reasons discussed throughout this opinion, we affirm the defendant’s convictions, and amend his sentences to delete the portion ordering jail time in default of payment of fines.
AFFIRMED AS AMENDED.

. The defendant’s son, Troy Duray Wallace, was similarly charged despite little evidence implicating him. The defendant and Wallace were jointly tried before a jury; Wallace testified, and was found not guilty.

. The record is void of any information regarding where the shirt was located, or the identity of the owner of the shirt. Witham testified only that “they found the scale first,” that this discovery intensified their search, and that "within a minute after we found the scale, we found the crack.”