Judgment rendered June 24, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,525-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

PHILLIP JARRATT                             Appellant

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Union, Louisiana
Trial Court No. 2018F55817

Honorable Bruce E. Hampton, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Sherry Watters

JOHN F.K. BELTON, JR.                Counsel for Appellee
District Attorney

CLIFFORD ROYCE STRIDER, III
E. MICHAEL MAHAFFEY
Assistant District Attorneys

* * * * *

Before MOORE, STEPHENS, and THOMPSON, JJ.

**MOORE, J.**

The defendant, Phillip Jarratt, was convicted by a jury of theft of money of more than $25,000. The court sentenced Jarratt to eight years at hard labor with all but the first four years suspended and three years of supervised probation conditioned on payment of restitution, fines, costs and fees, and other conditions of probation. Defense counsel made an oral request to reconsider sentence immediately following sentencing, but the court declined to take up the motion and directed counsel, if he chose, to file a written motion after the hearing. No follow-up motion to reconsider sentence was filed. This appeal followed. For the following reasons, we affirm defendant's conviction; we vacate the sentence and remand for resentencing.

## FACTS

The defendant, Phillip Jarratt, was hired in mid-2017 as a finance and insurance manager for Premier Autoplex ("Premier"), a used car sales dealership, in Farmerville, Louisiana. Premier was selling approximately 45-60 cars per month at that time. Jarratt was responsible for processing the paperwork of each car sale, including clearing the financing with the bank that "floor-planned" the vehicle and receiving down payments from purchasers. Customers made their down payments by cash, check or credit card.

Beginning in late November 2017, Jarratt began to keep some of the cash down payments, and he withheld processing the paperwork of the sales to avoid detection. Toward the end of March 2018, a Premier office manager notified the company owners that there were vehicles listed on the books that were no longer on the car lot. An inventory was performed which

indicated about 15 vehicles were missing. An investigation revealed that Jarratt had been "scooting aside" vehicles, meaning that while the cars were listed in the inventory, they were, in fact, no longer at the dealership.

Once he learned what was happening, Premier owner/manager Gordon Grant III approached Jarratt to discuss the matter. Grant recalled that Jarratt asked him if he could postpone their meeting so he could go and buy a pack of cigarettes or go to lunch. Grant consented. Jarratt left the dealership and never returned. Premier terminated Jarratt and notified the Union Parish Sheriff's Office.

Eventually Jarratt was located on April 16, 2018, at the Rayville Recovery Center in Richland Parish. According to Jarratt's ex-wife, he checked himself in the facility for an opioid addiction. When asked, post-*Miranda*, about the theft, Jarratt confessed. He was arrested and taken to the Richland Parish Sheriff's Office where he was again given *Miranda* warnings. Jarratt then made a recorded statement to officers.

In the recorded and transcribed statement, Jarratt admitted that he had taken the cash down payments of customers, but no checks. He stated that it was because of his opioid addiction – an addiction he claimed to have struggled with for 20 years. He said he was clean and sober at the time he became employed with Premier. Jarratt told officers that he stole $20,000 to $26,000 and stated that he wanted to make restitution, and there were individuals to help in that regard.

Premier filed a claim with its insurer, AmTrust North America ("AmTrust"), submitting a proof of loss statement on April 18, 2018, totaling $36,520. Premier's policy required a $1,000 deductible, and AmTrust covered the remaining $35,520 loss of down payments.

The two-day trial began on July 29, 2019. The first day was devoted to Jarratt's motion to suppress wherein he contended that his confession was invalid because he was under the influence of narcotics. The record reveals that Jarratt was consuming 15 to 30 milligrams of Oxycontin per day, which is considered a very high dosage. After hearing the evidence and argument, the trial court denied the motion to suppress.

The state presented testimony from the investigating officers and Gordon Grant and three of the customers who made cash down payments to Premier through Jarratt for the purchase of a vehicle. Jarratt's confession was admitted into evidence and played for the jury wherein he admitted to taking up to $26,000.

Gordon Grant testified that the actual loss according to the documentary evidence was $36,520, which was the total of the cash down payments which Jarratt removed from the receipt book. AmTrust paid Premier on its claim and, on November 5, 2018, submitted a request for restitution to the Union Parish District Attorney's Office stating it paid out $36,520 to Premier. However, Grant identified a letter to Premier from AmTrust accompanied by a settlement check in the amount of $35,520 representing the total loss of $36,520 minus a $1,000 deductible. Grant testified that Premier suffered a loss of business and reputation. Subsequently, they sold the business for a sale price that Grant estimated was over $1 million below the dealership's value.

The defense did not present testimony or evidence. The jury found Jarratt guilty as charged.

The sentencing was held on September 9, 2019. The court stated that it had reviewed the presentence investigation ("PSI") and letters submitted

on behalf of the defendant. It noted that Jarratt left the property when he realized the theft was discovered, and he never returned, never offered to "help straighten this mess he created," and never apologized or offered to pay his employer back for the money he stole. The only payment Jarratt made was apparently one $500 payment the week prior to sentencing.

Considering the sentencing factors of La. C. Cr. P. art. 894.1, the court found that Jarratt presented an undue risk that if not incarcerated, he would commit another crime, in light of his decision to steal on at least 19 occasions (19 car sales). However, the court expressly stated that it was granting leniency in light of the statements submitted on Jarratt's behalf, but also pointed out that Jarratt's demeanor indicated no remorse and, at times during the proceeding, he seemed belligerent. The trial judge was of the opinion that Jarratt's fleeing and admitting himself to rehab was a disingenuous attempt to manipulate the outcome of the criminal proceeding. Jarratt's failure to make any payments in restitution until the week prior to sentencing further showed his lack of remorse and insincerity. A lesser sentence, he stated, would deprecate the seriousness of the offense. The series of thefts manifested Jarratt's deliberate disregard for each of the victims who thought they had purchased cars. The trial judge also found that Jarratt submitted a letter to the court only when he realized that jail was a possibility. The trial judge noted that Jarratt, age 53, did not have a serious criminal history, and he had undertaken a minimal amount of drug rehabilitation. The trial judge then imposed sentence, as follows:

> Eight years' imprisonment at hard labor, with all but the first
> four years suspended, followed by three years' supervised
> probation effective upon his release from incarceration;

4

As a condition of probation, restitution paid to AmTrust (Premier's insurer) in the amount of $36,520 and to Premier in the amount of $10,000; and,

A recommendation for intensive drug rehabilitation program while incarcerated.

The court said further that it would sign a written sentencing form that would include as a condition of probation that Jarratt not commit an offense involving controlled dangerous substances because he considered the instant offense to be "drug related."

The printed form sentencing document included the sentence above plus a fine in the amount of $1,000 and "all costs of Court" in default of which Jarratt would serve 180 days in jail. Additionally, the sentencing form imposed 18 conditions of probation that include several "fees," all of which are briefly listed as follows:

(1)    Refrain from violating any laws;

(2)    Report to his probation officer;

(3)    Permit probation officer visits to your home, employment or elsewhere;

(4)    Meet all family obligations and financial obligations;

(5)    Submit to medical or psychiatric exams deemed appropriate by probation officer;

(6)    Be devoted to employment or occupation approved by probation officer;

(7)    Submit to searches of your person, dwelling or automobile and property by probation officer;

(8)    Refrain from owning any firearms, controlled dangerous substances, and alcoholic beverages;

(9)    Refrain from frequenting disreputable places and consorting with disreputable people;

(10) Remain within the jurisdiction of the court and obtain permission from probation officer to leave the area;

(11) Submit to random urinalysis as directed by the probation officer;

(12) Waive all extradition proceedings to other jurisdictions;

(13) Observe a 10 p.m. curfew Sunday through Thursdays and midnight on Fridays and Saturdays;

(14) Refrain from contacting any victim in this matter and make full and complete restitution to all victims and aggrieved parties of this crime in an amount and on a schedule to be determined by the Court and probation officer;

(15) Pay the following:

1. $150 to the Third JDC Clerk's Fund;

2. $15 to Crime Victims Reparation Fund;

3. $25 to DARE;

4. $2 to Crime Stoppers;

5. $50 to La. Comm. On Law Enforcement;

6. $15 fees for filing probation documents to Union Parish Clerk of Court;

7. $71 per month for probation management ($71 \times 36 = $2,556);

8. $11 to the Sex Offender Registry fund;

9. After all restitution, fine, fees and costs have been paid, $300 cost of defense to IDB, $300 cost of prosecution to DA's office, and $300 to Union Parish Sheriff's Office. Total of $900;

10. Pay an amount equal to a portion of the fine assessed and suspended in this proceeding to the Criminal Court Fund.

This appeal followed.

6

## DISCUSSION

By his sole assignment of error, Jarratt alleges that the district court made numerous legal errors and abused its discretion by imposing an eight-year sentence with extensive fines, fees, restitution, and conditions on an indigent first offender that are unattainable and overly burdensome, and, therefore, the sentence is constitutionally excessive under the circumstances of this offense and this offender.

Specifically, Jarratt alleges the court made numerous sentencing errors: the eight-year sentence is excessive even with all but four years of the hard labor sentence suspended; the "split sentence" with probation that is conditioned upon restitution is illegal; the financial obligations (restitution, fines, fees and costs) imposed are "exorbitant" for this defendant; and, the restitution award is illegal for several additional reasons and many of the conditions of probation set by the trial court are illegal or inappropriate.

In addition to constitutional excessiveness of the hard labor sentence, Jarratt specifically argues that the order of $36,520 restitution to the victim's insurer, AmTrust, is illegal, and the $10,000 restitution order to the victim, Premier, is not supported by the record. Further, the court did not consider or follow newly effective La. C. Cr. P. art. 875.1 when imposing more than $51,000 in restitution, fees, fines and costs on this indigent defendant.

## STANDARD OF REVIEW

An appellate court utilizes a two-pronged test when reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that the sentencing judge adequately considered

the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 16-0959 (La. 5/1/17), 219 So. 3d 332. The goal of La. C. Cr. P. art. 894.1 is articulation of the factual basis for a sentence, not rigid or mechanical compliance with its provisions. The trial court is not required to assign any particular weight to any specific matters at sentencing. *State v. Parfait*, 52,857 (La. App. 2 Cir. 8/14/19), 278 So. 3d 455, *writ denied*, 19-01659 (La. 12/10/19), 285 So. 3d 489.

Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bonanno*, 384 So. 2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Meadows*, 51,843 (La. App. 2 Cir. 1/10/18), 246 So. 3d 639, *writ denied*, 18-0259 (La. 10/29/18), 254 So. 3d 1208.

The trial court has wide discretion to impose a sentence within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Williams,* 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Allen*, 49,642 (La. App. 2 Cir. 2/26/15), 162 So. 3d 519, *writ denied*, 15-0608 (La. 1/25/16), 184 So. 3d 1289. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused

its discretion. *State v. Adams*, 53,055 (La. App. 2 Cir. 11/20/19), 285 So. 3d 526.

When a defendant fails to timely file a motion to reconsider sentence, the appellate court's review is limited to the bare claim that the sentence is constitutionally excessive. *State v. Mims*, 619 So. 2d 1059 (La. 1993); *State v. Wade*, 53,311 (La. App. 2 Cir. 1/15/20), 289 So. 3d 1158, 1162; *State v. Flores*, 52,639 (La. App. 2 Cir. 4/10/19), 268 So. 3d 1199.

The sentencing range for theft when the misappropriation or taking amounts to a value of $25,000 or more is imprisonment at hard labor for not more than 20 years, or a fine of not more than $50,000, or both. La. R.S. 14:67 B(1). The statute does not prohibit suspension of sentence.

In this case, defense counsel orally requested reconsideration of the sentence immediately after sentencing and the trial court refused to "take that up" at the sentencing hearing; he advised counsel to file a written motion. While no written motion was subsequently filed, we nevertheless consider defense counsel's timely oral request for reconsideration (coupled with the fact that the errors assigned include possible errors patent) sufficient to review the defendant's assigned sentencing errors.

We conclude that Jarratt's sentence of eight years with all but the first four suspended and three years of supervised probation is not excessive. The trial court adequately complied with Art. 894.1 citing several of the factors in that article for the sentence imposed. The theft involved at least 19 separate instances of stealing cash from customers over several months. When Jarratt's illicit acts were discovered by management, and Jarratt realized that he was about to be confronted, he made an excuse to leave the building and checked himself into a rehab to avoid authorities. The court

stated that Jarratt showed no remorse and, in the court's view, acted with extreme insincerity throughout the proceedings. Although the statutory maximum was hard labor for up to 20 years, Jarratt will actually serve only the first four years of an eight-year sentence, and the trial court noted that he will likely be released earlier. We therefore find that the sentence is not disproportionate to the offense nor does it shock our sense of justice. It is not constitutionally excessive.

We turn now to the various other errors that Jarratt alleges were illegal or make the sentence excessive.

First, Jarratt contends that the trial court erred by its "denial of suspension of sentence" for the first four years of the sentence. The sentencing transcript shows that the trial court suspended all but the first four years of the eight-year sentence; however, the written sentencing form reads: "The first four year(s) of the hard labor portion of sentence is to be served **without** suspension of sentence." Defendant asserts that this provision in the sentence is illegal because the theft statute, La. R.S. 14:67, does not grant authority to the trial court to impose a sentence without the benefit of *suspension* of sentence.

After review, we conclude that the statement on the sentencing form is of no consequence in this case.

La. R.S. 14:67 B(1), the sentencing clause for theft over $25,000, does not authorize a sentence *without* benefit of probation, parole, or *suspension* of sentence. Hence, the trial court has no authority to mandate that the first four years of a sentence for theft be served without benefit of suspension of sentence. *State v. Ripley*, 39,111 (La. App. 2 Cir. 12/15/04), 889 So. 2d 1214, *writ denied*, 05-0151 (La. 06/24/05), 904 So. 2d 718. However, in this

10

case, the court did not totally deny Jarratt "the benefit of suspension of sentence," as it suspended all but the first four years of the eight-year hard labor sentence. Although awkwardly written, the phrase on the form was meant to confirm that the first four years of the eight-year sentence were not included in the part of the sentence that the court was suspending. The court suspended "all but the first four years" of the eight-year hard labor sentence.

## RESTITUTION, FINES AND FEES

The remainder of errors alleged generally concern the court's imposition of fines, fees, and restitution, including the claim that they were exorbitant, excessive, and contrary to law.

First, Jarratt alleges that the court imposed an illegal sentence when it ordered him to serve a hard labor sentence *and* pay restitution, costs and fees. He maintains that, while a "split sentence" is permitted by La. C. Cr. P. art. 893, an order of restitution, costs and fees as a condition of probation where there the defendant must also serve a period of imprisonment *at hard labor* is contrary to law, citing both La. C. Cr .P. art. 895 B[1] and several cases, including *State v. McDonald*, 33,356 (La. App. 2 Cir. 6/21/00), 766 So. 2d 591 (trial court suspended the hard labor portion of defendant's two-year sentence and ordered him to pay restitution; held not illegal); *State v. Frith*, 561 So. 2d 879 (La. App. 2 Cir.), *writ denied*, 571 So. 2d 625 (La. 1990) (trial court did not suspend a two-year hard labor sentence; held that the portion of sentence ordering restitution and payment to the indigent defender program as a condition of probation was illegal

---

[1] La. C. Cr. P. art. 895 sets out conditions of probation that a court may impose when it places a defendant on probation, including a requirement that the defendant make reasonable restitution to the victim. Paragraph B authorizes the court to impose a term of imprisonment of up to two years *without hard labor*, as an additional condition of probation, while paragraph A(7) gives the court discretion to order restitution.

11

under La. C. Cr. P. arts. 895, 895.1); *State v. Modique,* 50,413 (La. App. 2 Cir. 1/27/16), 186 So. 3d 283, 289, *writ denied*, 16-0464 (La. 3/13/17), 216 So. 3d 80 (restitution and payment to the indigent defender program is authorized only when the trial court suspends the imposition or execution of sentence); and *State v. Bivens*, 201-156 (La. App. 3 Cir. 10/5/11), 74 So. 3d 782, *writ denied*, 11-2494 (La. 3/30/12), 85 So. 3d 115 (following *State v. Frith, supra.*)

Jarratt's argument with respect to La. C. Cr. P. art. 895 B is based on *State v. McDonald*, *supra,* in which this court affirmed a sentence of two years at hard labor, with the hard labor portion suspended, and the defendant to pay restitution as a condition of probation pursuant to Art. 895 A(7) and B(1). This court said that these provisions "therefore, permit * * * the sentencing court to impose both an order of restitution and a term of incarceration, without hard labor, as parts of the sentence imposed for a felony offense."[2] Paragraph B of Art. 895 permits a court, when the sentence has been suspended in a felony case, to impose up to two years incarceration *without hard labor* as a condition of probation. Paragraph A(7) of Art. 895 gives the court discretion to order restitution to an "aggrieved party" for damage or loss caused by the offense. Jarratt contends that when these two paragraphs are read in conjunction, the inescapable conclusion is that a court must suspend all of a hard labor sentence in order to make restitution a condition of probation.

Other cases cited by defendant can be read to imply that all of a hard labor sentence must be suspended in order to impose an order of restitution.

---

[2] A felony is defined in La. R.S. 14:2 as an offense punishable by imprisonment at hard labor.

12

*See, e.g. State v. Narcisse*, 97-3161, p. 1 (La. 6/26/98), 714 So. 2d 698, 699. ("A trial court may not require restitution to the victim unless the imposition or execution of sentencing is suspended"); *State v. DeGueurce*, 30,334 (La. App. 2 Cir. 2/25/98), 710 So. 2d 296, *writ denied*, 98-1213 (La. 10/9/98), 726 So. 2d 18.

The question presented is whether our law requires the sentencing court to suspend *all* of a hard labor sentence before it can order the defendant to make restitution to the victim as a condition of probation. For the following reasons, we conclude that it does not.

Pursuant to La. C. Cr. P. art. 893, the trial court has the discretion to suspend certain sentences "in whole or in part" in felony cases and to place a defendant on probation. If the trial court chooses to suspend all or part of a sentence, the court may "place the defendant on probation under the supervision of the division of probation and parole" for a specified time of not more than three years. La. C. Cr. P. art. 893 A(2).

A probationary sentence carries with it both mandatory and discretionary conditions. La. C. Cr. P. arts. 895 and 895.1. The conditions vary depending on the nature of the criminal activity involved as well as the financial condition and education of the defendant. Those conditions, applicable to all defendants placed on probation, are stated in La. C. Cr. P. art. 895, which provides that when the court places a defendant on probation, "it may impose" certain conditions, including "reasonable reparation or restitution to the aggrieved party for damage or loss caused by his offense." La. C. Cr. P. art. 895 A(7).

However, La. C. Cr. P. art. 895.1 A converts this from a discretionary to a mandatory condition where "the victim or his family has suffered any

13

direct loss of actual cash, any monetary loss pursuant to damage to or loss of property, or medical expense." Additionally, in La. C. Cr. P. art. 895.1 B, the trial court's discretion in setting conditions of probation is expanded to include requiring the probationer to pay a sum of money to the trial court's indigent defender program or criminal court fund, the sheriff or clerk of court, or other specified recipients. In addition, La. C. Cr. P. art. 895.1 C requires that the trial court set the monthly probation fee required in La. C. Cr. P. art. 895 A at not less than $60 nor more than $100.

Articles 893, 895 and 895.1 are all part of the same legislative scheme of Chapter 2, "Suspended Sentence and Probation," of Title XXX, "Sentence." Clearly these statutes must be read *in pari materia.* As such, an ordinary, unstrained reading of these statutes makes it clear that the discretionary and mandatory "conditions of probation" found Arts. 895 and 895.1 are logically and proximately tied to the probation authorized by Art. 893, which permits the court to place a defendant on supervised probation after suspending "in whole or in part" any sentence it imposes.

We find nothing in the statutes that provides when a court suspends only part of a hard labor sentence and places the defendant on supervised probation pursuant to La. C. Cr. P art. 893, it is prohibited from imposing an order of restitution, even when restitution is mandatory under Art. 895.1.

This court and others have previously reached the same conclusion. In *State v. Hampton*, 52,403 (La. App. 2 Cir. 11/14/18), 261 So. 3d 993, *writ denied*, 19-0287 (La. 4/29/19), 268 So. 3d 1029, the defendant was sentenced to three years at hard labor, all but one year suspended, and two years' supervised probation with restitution ordered as a condition of probation. In *State v. Bradley*, 99-364 (La. App. 3 Cir. 11/3/99),746 So. 2d

14

263, the defendant was sentenced to 10 years at hard labor on one count each of simple burglary and distribution of cocaine, with the sentences to run concurrently. The court suspended eight years of each sentence and placed the defendant on five years' supervised probation with special conditions, including restitution under La. C. Cr. P. art. 895.1. In *State v. Dauzat*, 590 So. 2d 768 (La. App. 3 Cir. 1991), *writ denied*, 598 So. 2d 355 (1992), the defendant was sentenced to five years at hard labor, three years suspended, and three years' supervised probation with restitution as a condition of probation.

We also conclude that Jarratt's argument regarding Art. 895 A(7) and B(1) is not supported by an ordinary, plain reading of the statutes and jurisprudence. An order of restitution may be ordered by the court under Paragraph A(7) "when the defendant has been placed on supervised probation" pursuant to suspension of *all or part* of a hard labor sentence. La. C. Cr. P. art. 893. We conclude that the same reasoning applies to Paragraph B.[3] Both are discretionary conditions of probation that may be ordered "when a court places a defendant on probation" after suspending all or part of a hard labor sentence. We surmise that Art. 895 B(1) is intended by the legislature to be used in those instances, *e.g. State v. McDonald, supra*, where a court believes that a sentence of incarceration *without hard labor* would be more conductive to rehabilitation. Under this provision, then, the court could suspend the entire hard labor sentence, as it did in *McDonald, supra*, and place the defendant on probation with the condition that he serve up to two years in jail without hard labor.

---

[3] Of course, it would be unusual for a court to impose a split imprisonment sentence, part of which served with hard labor, and part served without hard labor.

Our conclusion is further bolstered by the general sentencing provision in Chapter 1 of Title XXX, La. C. Cr. P. art. 883.2 A, which became effective January 1, 2000, and provides:

> In all cases in which the court finds an actual pecuniary loss to a victim, or in any case where the court finds that costs have been incurred by the victim in connection with a criminal prosecution, the trial court shall order the defendant to provide restitution to the victim as part of any sentence that the court shall impose.

Courts interpreting Art. 883.2 have concluded that it authorizes the court to order restitution as part of the principal sentence imposed, irrespective of any suspension of sentence, and they distinguish it from a discretionary or mandatory order to pay restitution as a condition of probation under La. C. Cr. P. arts. 895 and 895.1, respectively. *State v. Baxley*, 2014-48 (La. App. 3 Cir. 5/7/14), 139 So. 3d 556 (a court can order restitution to be paid in monthly installments when the order is a condition of probation, but not when restitution is ordered as part of the defendant's principal sentence under Art. 883.2); *State v. Young*, 45,265 (La. App. 2 Cir. 6/23/10), 42 So. 3d 1025 (restitution may be ordered even without a suspended sentence under Art. 883.2); *State v. Craft*, 2001-248 (La. App. 3 Cir. 10/3/01), 796 So. 2d 907; *State v. Hampton*, *supra* (court may order restitution under La. C. Cr. P. art. 895.1 or, alternatively, under La. C. Cr. P. art. 883.2.)

It would be anomalous to read these statutes in such a way that, on the one hand, under Art. 883.2, the court is required to order restitution *as a part of any sentence imposed*, including a hard labor sentence with no suspension of sentence, while, on the other hand, as argued by the defendant, when a court suspends only part of the hard labor sentence and places the defendant

on probation, it cannot order payment of restitution as a condition of probation because it did not suspend the entire hard labor sentence.

In conclusion, therefore, inasmuch as Art. 893 authorizes a court to suspend a sentence "in whole or in part" where suspension is allowed under the law, we conclude by reading this general article together with Arts. 883.2, 895, and 895.1, a sentencing court may impose a hard labor sentence, suspend part of that sentence and order restitution as a condition of probation as a part of the sentence. Accordingly, we find no error in this case, where the court ordered a "split sentence," suspended all but the last four years of the eight-year sentence at hard labor, and three years' supervised probation with, *inter alia,* an order to pay restitution as a condition of probation.

In his third argument, Jarratt charges that it is illegal to impose a fine of $1,000 and an undetermined amount of court costs on an indigent defendant with the order that in default of payment he is to serve 180 days in jail. We agree.

It is settled law that an indigent defendant cannot be subjected to default jail time in lieu of the payment of a fine, costs or restitution. *State v. Lewis*, 48,373 (La. App. 2 Cir. 9/25/13), 125 So. 3d 482. A defendant's indigent status in such a situation may be discerned from the record. *Id.* Where a defendant is represented at trial by the Indigent Defender's Office, or on appeal by the Louisiana Appellate Project, this court has considered it error for a trial court to impose jail time for failure to pay court costs. *Id.*

The record shows that Jarratt is an indigent defendant and the sentencing transcript shows that the court recognized him as such.

17

Accordingly, we vacate that portion of the sentence imposing jail time in default of payment of the fine and court costs.

The fourth and fifth errors contest the court's order of restitution. He asserts that the trial court erred by ordering him to pay $36,520 restitution to AmTrust for two reasons: First, AmTrust is an insurer and not the victim of the crime; second, the evidence shows that AmTrust paid only $35,520 to Premier because the insurance policy had a $1,000 deductible. Additionally, Jarratt argues that there was no evidence at trial to support the $10,000 order of restitution to Premier.

Both alleged errors have merit. Pursuant to La. C. Cr. P. art. 895.1, "When a court places the defendant on probation, it shall, as a condition of probation, order the payment of restitution in cases where the victim or his family has suffered any direct loss of actual cash, any monetary loss pursuant to damage to or loss of property, or medical expense." Similarly, La. C. Cr. P. art. 895 A(7) gives the trial court discretion to impose an order of restitution to an "aggrieved party" that has suffered a pecuniary loss. Louisiana courts have repeatedly held that a defendant cannot be ordered to pay restitution to insurers because they are not actual victims to crimes such as theft, burglary, or criminal damage to property. *State v. Walker*, 15-1026 (La. App. 4 Cir. 4/6/16), 192 So. 3d 813, 819 (restitution to any "other victim" is allowed only if part of a valid plea agreement; *State v. Green*, 09-309 (La. App. 5 Cir. 11/24/09), 28 So. 3d 1105, 1119 (holding the same); *State v. Portie*, 2008-1580 (La. App. 4 Cir. 9/16/09), 22 So. 3d 213 (insurance company was not the victim of the crime pursuant to La. C. Cr. P. art. 895.1, but rather, was "merely fulfilling a contractual obligation to

indemnify the insured for his loss"); *State v. Smith*, 2008-1030 (La. App. 3 Cir. 3/4/09), 6 So. 3d 309 (insurance company is not actual victim of crime).

In this case, AmTrust was not the victim of theft; it was contractually obligated to indemnify Premier, the actual victim or aggrieved party, for the financial losses it incurred directly from the theft. There is no jurisprudence supporting the notion that an insurer is a victim as contemplated by the Code of Criminal Procedure. According to the cases cited, the only circumstance where the insurer may be entitled to restitution is if such is part of a defendant's plea agreement, which is not the case here. Any remedy of the insurer would require a civil action for reimbursement.

We note that Premier, the victim, paid a $1,000 deductible for the occurrence to AmTrust. However, the court ordered Jarratt to pay restitution in the amount of $10,000.

La. C. Cr. P. art. 895.1 A(1) requires the court to order "restitution in a reasonable sum not to exceed the actual pecuniary loss to the victim in an amount certain." We find that the $10,000 sum ordered as restitution is speculative and not supported by the trial evidence. Mr. Grant, one of the owners of the dealership, testified, without any documentary evidence or financial records in support, that they sold the car lot for less than its true value by perhaps $1 million. Similarly, the officer who wrote the PSI reported that Chris Colbert, another owner/manager, said he personally lost about $10,000, but Colbert did not appear at trial and there was no evidence to support the claim at trial or in the PSI. The statute requires a showing of actual pecuniary loss, which was not shown in this case.

For this reason, we conclude that the court abused its discretion by ordering Jarratt to pay restitution in the amounts of $36,520 to AmTrust and $10,000 to Premier.

Jarratt also argues that the restitution order along with other fines, fees, and costs, which totaled over $51,000, is unreasonable and grossly excessive, given the fact that he is indigent, 53 years old and will be 57 if he serves a four-year sentence. Additionally, before making the restitution order, the court failed to make a finding regarding Jarratt's ability to actually make restitution, did not indicate that it had analyzed his earning capacity and assets before ordering the restitution as well as costs, fines and fees upon release, and also failed to set forth a payment plan. These errors rendered the sentence indeterminate that requires that it be vacated. *State v. Ripley*, 39,111 (La. App. 2 Cir. 12/15/04), 889 So. 2d 1214, *writ denied*, 05-0151 (La. 6/24/05), 904 So. 2d 718.

In *Ripley*, we held that the sentence was indeterminate when the trial court ordered restitution as a condition of probation, but failed to set an exact amount due or to analyze the defendant's financial ability to pay. La. C. Cr. P. art. 895.1 A(1) requires that the court order "restitution in a reasonable sum not to exceed the actual pecuniary loss to the victim in an amount certain. * * * The restitution payment shall be made, in the discretion of the court, either in a lump sum or in monthly installments based on the earning capacity and assets of the defendant." Thus, the statute requires that the amount of restitution be determined by the court, and that it be paid in lump sum or monthly installments depending on the defendant's earning capacity and assets. Failing to make an inquiry into Jarratt's abilities and assets, and failure to set a determinate payment schedule for

20

restitution, is error patent requiring that the sentence be vacated and the case remanded for resentencing.

Furthermore, the court cannot delegate these matters to a probation officer to determine the amount of restitution upon defendant's release from incarceration as was once permitted by pre-Article 875.1 law. *State v. Ripley, supra.*

We also observe that Jarratt was sentenced on September 9, 2019. On August 1, 2019, La. C. Cr. P. art. 875.1,[4] "Determination of substantial

---

[4] The complete statute reads:

A.     The purpose of imposing financial obligations on an offender who is convicted of a criminal offense is to hold the offender accountable for his action, to compensate victims for any actual pecuniary loss or costs incurred in connection with a criminal prosecution, to defray the cost of court operations, and to provide services to offenders and victims. These financial obligations should not create a barrier to the offender's successful rehabilitation and reentry into society. Financial obligations in excess of what an offender can reasonably pay undermine the primary purpose of the justice system which is to deter criminal behavior and encourage compliance with the law. Financial obligations that cause undue hardship on the offender should be waived, modified, or forgiven. Creating a payment plan for the offender that is based upon the ability to pay, results in financial obligations that the offender is able to comply with and often results in more money collected. Offenders who are consistent in their payments and in good faith try to fulfill their financial obligations should be rewarded for their efforts.

B.     For purposes of this Article, "financial obligations" shall include any fine, fee, cost, restitution, or other monetary obligation authorized by this Code or by the Louisiana Revised Statutes of 1950 and imposed upon the defendant as part of a criminal sentence, incarceration, or as a condition of the defendant's release on probation or parole.

C.     (1) Notwithstanding any provision of law to the contrary, prior to ordering the imposition or enforcement of any financial obligations as defined by this Article, the court shall determine whether payment in full of the aggregate amount of all the financial obligations to be imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents.
(2) The defendant may not waive the judicial determination of a substantial financial hardship required by the provisions of this Paragraph.

D.     (1) If the court determines that payment in full of the aggregate amount of all financial obligations imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents, the court shall do either of the following:

21

(a) Waive all or any portion of the financial obligations.
(b) Order a payment plan that requires the defendant to make a monthly payment to fulfill the financial obligations.

(2)(a) The amount of each monthly payment for the payment plan ordered pursuant to the provisions of Subparagraph (1)(b) of this Paragraph shall be equal to the defendant's average gross daily income for an eight-hour work day.
(b) If the court has ordered restitution, half of the defendant's monthly payment shall be distributed toward the defendant's restitution obligation.

(c) During any periods of unemployment, homelessness, or other circumstances in which the defendant is unable to make the monthly payments, the court or the defendant's probation and parole officer is authorized to impose a payment alternative, including but not limited to any of the following: substance abuse treatment, education, job training, or community service.

(3) If, after the initial determination of the defendant's ability to fulfill his financial obligations, the defendant's circumstances and ability to pay his financial obligations change, the defendant or his attorney may file a motion with the court to reevaluate the defendant's circumstances and determine, in the same manner as the initial determination, whether under the defendant's current circumstances payment in full of the aggregate amount of all the financial obligations imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents. Upon such motion, if the court determines that the defendant's current circumstances would cause substantial financial hardship to the defendant or his dependents, the court may either waive or modify the defendant's financial obligation, or recalculate the amount of the monthly payment made by the defendant under the payment plan set forth in Subparagraph (1)(b) of this Paragraph.

E.  If a defendant is ordered to make monthly payments under a payment plan established pursuant to the provisions of Subparagraph (D)(1)(b) of this Article, the defendant's outstanding financial obligations resulting from his criminal conviction are forgiven and considered paid-in-full if the defendant makes consistent monthly payments for either twelve consecutive months or consistent monthly payments for half of the defendant's term of supervision, whichever is longer.

F.  If, at the termination or end of the defendant's term of supervision, any restitution ordered by the court remains outstanding, the balance of the unpaid restitution shall be reduced to a civil money judgment in favor of the person to whom restitution is owed, which may be enforced in the same manner as provided for the execution of judgments pursuant to the Code of Civil Procedure. For any civil money judgment ordered under this Article, the clerk shall send notice of the judgment to the last known address of the person to whom the restitution is ordered to be paid.

G.  The provisions of this Article shall apply only to defendants convicted of offenses classified as felonies under applicable law.

financial hardship to the defendant," became effective and is applicable to this case.[5] For sentences imposed after August 1, 2019, Art. 875.1 C(1) requires a hearing in the district court to determine whether any "financial obligations," which are defined in paragraph B as "any fine, fee, cost, restitution, or other monetary obligation," will impose undue hardship on the defendant or his dependents. This hearing cannot be waived. La. C. Cr. P. art. 875.1 C(2). Pursuant to this hearing, the court is authorized to waive all or part of the payments or to make a payment plan. Additionally, La. C. Cr. P. art. 875.1 D(2) offers options for the payment plan or alternatives to payment.

Most importantly, Art. 875.1 A enacts the policy that "financial obligations" (fines, fees, costs, and restitution) should not create a barrier to the offender's successful rehabilitation and reentry into society. Financial obligations in excess of what an offender can reasonably pay undermine the primary purpose of the justice system which is to deter criminal behavior and encourage compliance with the law. Financial obligations that cause undue hardship on the offender should be waived, modified, or forgiven.

In view of these provisions, our concern in this case is that the trial court appears to have imposed on an indigent defendant nearly every available fine, assessment, fee, and court cost, as well as restitution pursuant to La. C. Cr. P. art. 895 and 895.1, all as a part of a fairly substantial term of imprisonment for a first offender, and little, if any, evidence that the defendant has or will have wherewithal to successfully meet these conditions

---

[5] Acts 2018, No. 668, § 6.

of probation.  In short, the sentence appears to be doomed to failure from the outset in terms of rehabilitation and reentry into society.

Accordingly, on remand, the sentencing court is instructed to hold a hearing to make a judicial determination of the hardship of all court-imposed financial obligations on the defendant when imposing such obligations and other conditions of probation in light of La. C. Cr. P. art. 875.1.

Finally, Jarratt challenges several of the other conditions of probation. Because we are vacating the entire sentence and remanding for resentencing per our instructions above, we deem it unnecessary to traverse these alleged errors.  We note, however, that Jarratt challenges the portion of condition No. 8 requiring that he refrain from owning or possessing a firearm on the basis that such condition is not reasonably related to his rehabilitation for this offense.  The office theft in this case is not a crime of violence and Jarratt has no criminal history involving crimes of violence.  There is nothing in the record that would support a finding that this condition of probation is reasonably related to the theft of money from his employer to support his opioid addiction.  Without more, this condition of probation that prohibits the exercise of a constitutional right is in no way related to Jarratt's rehabilitation as required by La. C. Cr. P. art. 895 A.  *See State v. Pashandi*, 490 So. 2d 679 (La. App. 2 Cir. 1986), and case analysis therein.[6]

---

[6] On remand we highly recommend *State v. Pashandi* for providing "the best formula for evaluating whether a probationary condition is reasonably related to rehabilitation." *Id.* at 684.

24

## ERRORS PATENT

The discussion of the alleged illegal conditions of probation and the illegal order of restitution to the insurer are addressed under the assigned error. No other errors patent were found.

## CONCLUSION

For the foregoing reasons, the defendant's conviction is affirmed; we vacate and set aside the sentence and we remand the case to the trial court for resentencing in accordance with the principles and instructions set forth hereinabove.

**AFFIRMED IN PART; SENTENCE VACATED AND SET ASIDE; REMANDED WITH INSTRUCTIONS.**